Hervey *v.* Hervey.

---

## EVA MAY HERVEY

*v.*

## LEE A. HERVEY.

[Filed November 1st, 1897.]

1. A suit for maintenance involves the marriage *status*, and where the domicile of both parties is within the state, and defendant is temporarily absent, and has no place of abode within the state, the court acquires jurisdiction, upon service of process by publication, to pronounce a decree for payment of maintenance out of his property within the state, based upon the domicile of both parties and its control over the *status* by reason thereof. On the state of facts shown—*Held*, that at the time of the filing of the bill and of

the service of the subpœna and notices the legal domicile of defendant, for the purposes of jurisdiction in the suit, was in New Jersey.

2. Defendant had left the state with intent to remain away for an indefinite time, and his father's residence was not his actual place of abode at the time of the service of the subpœna, and service could not legally be made by leaving it at such residence.

3. As a condition of granting leave to the defendant to enter a special appearance to contest the question of jurisdiction, there should be inserted in the order an understanding or stipulation that the defendant would submit without further process to the order of the court if the point should be decided against him.

On bill for support, &c., and application to set aside orders, &c. Heard on petition to set aside service of subpœna and orders subsequent thereto, including order for temporary alimony. Heard on petition, answer and proofs taken orally.

*Mr. Chandler W. Riker*, for the defendant.

*Mr. James E. Howell, contra.*

Emery, V. C.

This is a bill for support and maintenance under the twentieth section of the Divorce act. *Gen. Stat. p. 1270.* Subpœna was issued against the defendant to answer the bill and has been duly returned served, and an order for alimony *pendente lite* and counsel fees has also been made. Application by petition is now made by the defendant (by virtue of special appearance and leave for that purpose) to set aside the service of the subpœna, the order for alimony and all other orders in the cause. The reason alleged in the petition is that at the time of the service of the subpœna and notices of the application for alimony, the defendant had no actual or legal residence in the State of New Jersey; that the subpœna and notices were served after the 12th of December, 1896, by leaving copies at the residence of defendant's father in the city of Newark; that on that date defendant "left the city of Newark with the intention of being absent for some years and engaging elsewhere in business," and that he had previously, on account of the state of his health,

closed out his business interests in Newark with the intention of leaving the city and establishing his residence permanently in Mexico or some other climate more suited to his health. He claims that since the 12th day of December, 1896, when he actually left the city of Newark, he has not had an actual or legal residence in the city of Newark or State of New Jersey. As to his residence in New Jersey, up to the 12th of December, 1896, the defendant alleges that on October 28th, 1895, and previously thereto, he resided in Newark, on Riverside avenue, and not at his father's residence (128 Montclair avenue); that from that date he was in a hospital until April, 1896, when he was taken to his father's residence to be cared for during convalescence, and left there about July 1st, 1896, to travel until the latter part of August, 1896, when he again visited his father, expecting, however, that his visit would not extend beyond the beginning of cold weather, when it would be necessary for him, on account of his health, to go to a southern climate. As one of the questions to be decided upon this application involves, in my judgment, jurisdiction of the court to make the order in question, and this depends to some extent upon the *status* of the record and proceedings in the cause, a statement of these in some detail is necessary.

The bill was filed on December 16th, 1896, subpœna thereon was issued December 30th, 1896, returnable January 13th, 1897, and was duly returned by the sheriff of Essex county, "served" on December 31st, 1896. On the day of filing the bill notice of an application for alimony *pendente lite* and counsel fees was served by leaving copies of the bill and affidavits and notice at the residence of defendant's father, Daniel E. Hervey, in Newark. The affidavit of service stated that these were served on the defendant " by leaving the same at his residence with a member of his family over the age of fourteen years, on the 16th day of December." On the day for which notice was given the defendant did not appear, and it being suggested to the chancellor (by whom does not appear) that the defendant had recently left his last place of residence for parts unknown, an order was on that day, December 21st, 1896, made by the chancellor recit-

Hervey v. Hervey.

ing the proof of service of notice of the application for temporary alimony upon the defendant "by leaving the same at his last-known place of residence" and the suggestion to the court "that the defendant has recently left his said last-known place of residence for parts unknown," and the order then referred the cause to me, as vice-chancellor, to hear the same and advise decree. It was further ordered that the defendant appear on Tuesday, December 29th, 1896, to show cause why alimony *pendente lite* should not be ordered. No special directions as to service of the order were made. A copy of this order was served on December 23d by leaving at the residence of defendant's father the affidavit stating that it was served on defendant "by leaving the same at his residence." On the return-day of the order the defendant did not appear, but a solicitor, who stated that he did not appear for the defendant, filed (with the consent of complainant's solicitor) affidavits of Daniel E. Hervey and Ella Hervey, defendant's father and mother, stating among other things that the defendant had not resided at his father's residence since the 12th day of December, 1896; and that on that day he left the state. The father further states that "he is unable to locate the said Lee A. Hervey so as to communicate with him," and the mother, "that she did not know of the present whereabouts of the said Lee A. Hervey." It now appears that, as a matter of fact, the defendant, on or about December 23d, 1896, sailed for Cuba, and both his father and mother knew this, and his father took down his trunk to the steamer. The affidavits filed on the return day by the complainant as to the manner of service of the original notice of application for alimony, showed that this was served upon defendant's mother on December 16th, who said that the defendant lived there; that he was not at home and that she did not know when he would return, and that she took the papers, asking when she should deliver them to the defendant. The order of December 21st was served on December 23d, at the same place, by attempting to deliver to defendant's father, who declined to take it. The defendant not appearing at the return day, an order was made December 31st, 1896, reciting due

notice of motion to the defendant and referring the application to a master, to report as to the amount of temporary alimony and counsel fees. The master's summons under the order was served on the defendant "by leaving at his residence" and by subpœna *ad testificandum*. Defendant's father and other witnesses were examined as to his property. The master reported on January 14th, 1897, that the defendant was possessed of property or had property held in trust for him, a portion of which was productive real estate, the net annual receipts of which were estimated at $550, and that an allowance of $4 per week for temporary alimony and $75 counsel fees should be made.

On January 18th, 1897, an order for alimony *pendente lite* at $4 per week, from December 16th, 1896, the date of filing the bill, and for $50 counsel fees, was made. The jurisdiction of the court to entertain the suit for maintenance was in the original bill based on the fact of complainant's residence in the state at the time of the marriage, November 29th, 1896, and the husband's refusal to provide for her support or to live with her after his marriage, and it was also alleged in the bill that her husband was, at the time of the marriage, engaged in the real estate business in Newark, and that he was possessed of property, real and personal, worth not less than $12,000, but no specification of the property was made. By an amendment to the bill, filed January 21st, 1897, after the order for alimony, it was alleged that about the time of the marriage the defendant owned four tracts of land in Newark (specifying them), and also a note of $5,000, made by a traction company and due in March, 1897, and that he had transferred all his real estate and personal property (including these) to his father, Daniel E. Hervey, and to his business partner, Charles Roller, without consideration and for the purpose of preventing complainant from obtaining any interest thereon, or from being compelled to support her out of his income therefrom, and further that her husband had no property outside of the State of New Jersey, and that was his only property so far as complainant knew, and seizure and sequestration of this property by the process of the court for proper provision for complainant was prayed. On January

Hervey v. Hervey.

20th a copy of the decree for temporary alimony was served at the residence of defendant's father, as his place of residence. On January 29th, 1897, on defendant's application and the complainant not opposing, an order was made for leave to enter a special appearance " to apply to set aside the order for alimony *pendente lite* and all other orders in the cause, because defendant has not been served with any notice, petition or subpœna in said cause, and of applying to set aside all record or service thereof, and for no other purpose whatever." This order, it will be observed, did not reach to the setting aside of the service of the subpœna but only of the order for alimony and other orders, and the order imposed no conditions upon defendant. The appearance entered January 30th, 1897, followed the terms of the order and was specially entered " for the purpose of applying to set aside the order for alimony and all other rules and orders in the cause, because the defendant has not been served with any notice, petition or subpœna in the cause, and of applying to set aside all record of service thereof, and for no other purpose whatever."

The petition now coming on to be heard, and which was filed February 9th, included, as above stated, an application to set aside the service of the subpœna as well as the order for alimony and other orders in the cause, and upon this an order to show cause was granted why the same should not be set aside, both parties to have leave to take affidavits on notice, to be read on the hearing. On the day of filing this petition by the defendant the complainant filed another petition in the cause, setting out that the defendant had not paid either alimony or counsel fee, as ordered by the court; that the defendant was the owner and holder of two certain mortgages on lands in Newark—one given by Charles A. Roller, December 4th, 1896, for $750, another given by Samuel to him on November 11th, 1896, for $700— and praying for a receiver to take charge of these mortgages and any other property of the defendant and to sequestrate them for the payment of the decree. Upon this petition and on notice served at the father's residence, stated to be defendant's, an order was made, reciting the two applications of complainant and

defendant and granting an injunction restraining payment of the mortgages to the defendant and restraining defendant from receiving payment, which injunction was served on defendant in the same manner as the other notices and orders. On February 23d a further order was made on complainant's application, directing the defendant to show cause why counsel fee and costs should not be paid to complainant on the defendant's application to set aside the proceedings, and this order was directed to be served on Riker & Riker, the solicitors, who had entered a limited appearance. Service of a copy of this order was acknowledged by "Riker & Riker," not, however, describing themselves as solicitors of the defendant or as acting in any other capacity for him.

In lieu of affidavits the hearing took place orally in open court and, upon defendant's application, the argument extended to setting aside the service of subpœna as well as the orders. The order for alimony *pendente lite* was not based on the service of the subpœna, but on the application therefor made on notice, and in the view which I take of the jurisdiction of the court of chancery in this case, even if the service of the subpœna should be set aside as not made according to the chancery statute regulating the service of subpœna, which is specially adopted in these cases, by the Divorce act (section 6), yet the validity of the order for temporary alimony, so far as the service of the notice of application therefor is concerned, must depend ultimately upon the jurisdiction of the court to render final decree in the cause for payment by the defendant or out of his property. If the court has such final jurisdiction in this cause, and can render decree in a suit for maintenance against an absent defendant by publication under the statute and its rules, then the validity of an order for alimony, which is objected to solely because the defendant had no residence or place of abode within this state at which subpœna could be served under the statute or notice could be left, depends on a different consideration. By rule 20 of this court all notices of motions, of summons to attend master, &c., are regularly served on persons not resident in this state by setting up the same in the office of the clerk of this court. Resi-

dence under this rule means, I take it, " dwelling-house or usual place of abode," at which, under section 13 of the Chancery act as amended, process for appearance is to be served. *Gen. Stat. p. 398 ¶ 136.* And this rule in terms reaches the present case as to the orders for temporary alimony, if the defendant be, as he claims, a non-resident. But in proceedings for alimony *pendente lite,* as in all proceedings for divorce, the object of the court has always been to give the defendant actual notice if possible and an opportunity to be heard on the application, and where the defendant is non-resident the practice is to direct notice of such application in a manner most likely to give actual notice, which would include the leaving of the notices with such persons in this state, relatives or others, who would be most likely to communicate the notice to defendant, if complainant had no information how to reach him. As, therefore, the defendant's objection to the order for alimony in this case is not for the purpose of being heard on the merits of the order, or to have service made on him according to the rules as a non-resident, but is based purely on the manner of service of the notice, the order for alimony should not, in my judgment, be set aside, for reason of the manner of service, even if defendant is a non-resident, if the court has jurisdiction to render final decree against the defendant as a non-resident, and if the notice which has been actually given has been such as the court, with a view to giving him actual notice, would have directed to be given on the facts as they now appear. In other words, if the court has jurisdiction in this cause to render a final decree against the defendant for alimony or maintenance by any method of proceedings under our statute, either by service or publication, I see no reason for setting aside this order for alimony *pendente lite* simply because defendant has no residence in the state where notice could be served. Whether the court has such jurisdiction for final decree in the cause seems to me, therefore, to be the main question which arises on the evidence given on the hearing as to the defendant's residence and domicile. The question of legal domicile, as well as of actual and legal residence, arises for the reason that an application for support or maintenance by a wife against

her husband, being an attempt to enforce an obligation which
arises solely out of the matrimonial *status*, the proceeding is, or
may be, one which is like actions for divorce and other actions
directly involving the continuance of the *status*, and the juris-
diction of the court is therefore dependent to some extent on the
domicile of the parties complainant and defendant. Our own
statute confers the jurisdiction as to divorce and maintenance by
the same act, and in the same clause of the act and in connection
with each other, and in each proceeding makes the same con-
ditions as to residence as giving jurisdiction. The language of
section 1 of the act is (*Gen. Stat. p. 1273*)

" that the court of chancery shall have jurisdiction of all causes of divorce
and of alimony and maintenance by this act directed and allowed, provided
the parties complainant and defendant, or either of them, were or shall be
inhabitants of this state at the time of the injury, desertion or neglect com-
plained of, or where the marriage shall have been solemnized or taken place
within this state at the time of the injury, desertion or neglect complained of
and at the time of exhibiting the bill."

And in this respect of jurisdiction the statute has existed in
this precise form from the time of the first statutory provision
for maintenance by the act of February 3d, 1818 (*P. L. of 1818
p.* 43), which was incorporated in the Revision of 1820 (page
667), on repealing the act of 1818. Now, in reference to the
residence of the parties required for purposes of divorce, the
court has always held that the residence or inhabitancy contem-
plated by the act must be the actual legal domicile. *Winship*
v. *Winship, 1 C. E. Gr. 107 (Chancellor Green, 1863)*; *Cod-
dington* v. *Coddington, 5 C. E. Gr. 263 (Chancellor Zabriskie)*;
*Firth* v. *Firth, 5 Dick. Ch. Rep. 137 (Vice-Chancellor Van
Fleet, 1892)*, and cases cited.

Inhabitancy or residence as construed under this act in cases
involving the jurisdiction of the court to dissolve the matrimo-
nial *status*, seems by these cases to be construed as equivalent
to such domicile as would, upon the general principles of law, be
recognized as conferring jurisdiction to adjudicate upon the
*status*. Under the rule established by these cases, the actual
legal domicile by complainant or defendant in actions for divorce,

under the act, would be sufficient to sustain jurisdiction so far as the point of residence or inhabitancy was involved. No decisions, however, have been made in our courts in cases of application of a wife for maintenance directly upon the question of the jurisdiction of the court to pronounce decree against a defendant non-resident who has property in the state out of which payment may be directed to be made. The fact that the requirements of the statute for the two causes of action, divorce and maintenance, are the same and are united in the same provisions of the act would seem to be a legislative declaration that the same rules as to jurisdiction, dependent on residence, apply to both cases, and the further provision of the twentieth section, relating to maintenance, that the court might decree maintenance to be paid by the husband or out of his property, read in connection with the first clause of the act, would certainly seem to be intended to confer a jurisdiction arising out of possession of property in the state, in connection with defendant's domicile in the state. But whatever be the intention of the statute as to jurisdiction, and however clearly the jurisdiction to make such decree for maintenance against a non-resident defendant to be paid out of his property may be conferred by the statute, the ultimate jurisdiction for decree for payment, whether by defendant or out of his property, must, as it seems to me, depend upon the question whether the decree in such cases is to be considered as purely and simply a decree *in personam*, such as would arise on a personal liability, based on contract or tort, or whether it is to be treated as a decree based on the control over the matrimonial *status* by reason of the domicile of one or both of the parties, which may be made by the court which has jurisdiction over that *status*. If the decree is purely of the former character, then, under the decision of the United States supreme court in *Pennoyer* v. *Neff, 95 U. S. 714,* and the cases following it, the decree *in personam* must be based on service within the state, and the ownership of property within the state will not confer jurisdiction as *in rem* unless, under the statutes of the state, the jurisdiction is based on the seizure of the property as the foundation of the suit. But if, on the other hand, the

decree for payment is based on the control of the matrimonial *status* as itself the thing relating to which jurisdiction is exercised by reason of the domicile, then, by the recognized principles of the law, the court which has jurisdiction over the *status* could make a valid decree.

The supreme court of Massachusetts takes the latter view of the nature of the decree for maintenance. This court holds that since the decision in *Pennoyer* v. *Neff*, a judgment *in personam* against a non-resident not founded on service of process within the state is no longer valid, even within the state itself. *Eliot* v. *McCormick, 144 Mass. 10; Needham* v. *Thayer, 147 Mass. 536.* But it also sustains the judgments of the state court on suits under the state statutes for alimony and maintenance against non-residents. In *Blackinton* v. *Blackinton, 141 Mass. 432 (1886)*, a man and woman, citizens of Massachusetts, were married in that state, and subsequently the husband left his wife without cause and went to New York, becoming a citizen of that state, the wife continuing to remain a citizen of Massachusetts. Upon petition to the probate court for an order for support and maintenance under a statute, notice of the proceeding by delivery to the defendant was directed, and this notice was served in New York. No attachment of property in the state was made as the basis of the proceedings, and upon a special appearance and plea to dismiss for want of jurisdiction, the court sustained the jurisdiction to order a monthly payment for support. Mr. Justice Holmes, as to this part of the decree (at *p. 436*), says: "The whole proceeding is for the regulation of a *status*. The incidents of that *status* are various—some concerning the person, some concerning the support of the petitioner or her child. The order to pay money is not founded on an isolated obligation as in the case of contract or tort, but upon a duty which is one of those incidents. The *status*, considered as a whole, is subject to regulation here, because such regulation is necessary rightly to order the daily life, and to secure the comfort and support of the party rightfully living within the jurisdiction. It is quite true that these considerations may not suffice to give the decree extra-territorial force, and that in general courts do not willingly

pass decrees unless they think that other courts at least ought to respect them.    But this is not the final test."    The decree was held to be within the power of the court and to be carried out against the defendant's property within the jurisdiction and against his person, if found there.

The Massachusetts statute, like our own, makes the same provision as to jurisdiction in divorce and maintenance proceedings, and this feature was relied on to some extent in sustaining the decree.    This case, it will be observed, extends the jurisdiction of the court of the wife's domicile in maintenance cases to a decree binding on property within its limits against the husband who, leaving his original domicile, has become domiciled elsewhere. It is claimed in the present case that the defendant's legal domicile is still in New Jersey, and that at the time of filing the bill and service of the subpœna and notices, and even up to the time of the hearing, no domicile or citizenship elsewhere had been acquired by the husband.    If this be the result of the evidence on this point, then the settled rule is that a legal domicile once acquired remains until another is obtained.    *2 Bish. Mar. & D.* (6th ed.) § *118 a; Cadwalader* v. *Howell, 3 Harr. 138 (1840);* *Firth* v. *Firth, supra.*    An additional basis for the jurisdiction of the court in this case would exist in the fact that the legal domicile of both parties is still here.

A different view of the nature of the decree for maintenance was taken in *Bunnell* v. *Bunnell, 25 Fed. Rep. 214 (Brown, District Judge, 1885)*, and this learned judge held that where a decree for alimony had been obtained in a suit for divorce without service within the jurisdiction of the court upon a defendant resident elsewhere, it could not, under the doctrine of *Pennoyer* v. *Neff*, be enforced against the property within the jurisdiction He seems to consider (at *p. 216*) a claim for alimony as a purely personal claim, resting upon the same basis as other personal claims, and like them enforceable anywhere by personal service of process within the jurisdiction of the court, but not enforceable otherwise.    This view as to the character of the claim for alimony was adopted and stated without any special discussion of its nature, and so far as relates to the jurisdiction of a court to

12

enforce it merely because of personal service of process within its jurisdiction on defendant irrespective of his domicile, seems to be at variance with the authorities. These declare generally that jurisdiction of suits for support as well as for divorce, depends upon the domicile either of complainant or of defendant, which gives the court jurisdiction over the *status*, and that the mere service of process on defendant in a jurisdiction not the domicile of either husband or wife is no basis for jurisdiction, as it would be in the case of a claim purely personal. *1 Bish. Mar. & D. § 359 a.*

The same view of the personal character of the decree for alimony is taken by other authorities, which hold that where the defendant's domicile is in another state alimony cannot be awarded so as to make the decree therefor valid in another state as a decree *in personam*. *1 Bish. Mar. & D. § 170.* In *Hunt v. Hunt, 72 N. Y. 217,* the jurisdiction over defendant in a divorce suit, by reason of his domicile within the state, was sustained, although he could not be served within the state but was brought in by publication as an absent defendant. In *Lynde v. Lynde, 9 Dick. Ch. Rep. 473* (affirmed, *10 Dick. Ch. Rep. 591*), it was said by Chancellor McGill that a decree for alimony against an absent defendant who did not reside or have his domicile in the state and did not appear or have property under the court's control could not be made in an *ex parte* suit for divorce, except upon due actual notice to the defendant, and the decree for divorce was amended to insert such order. In the present case the defendant has property within the jurisdiction of the court, and upon the evidence I reach the conclusion that his legal domicile is still in New Jersey, and, in my opinion, the rule applicable to this case is that the claim for maintenance under our statute involves, as a basis for jurisdiction, the *status* of the parties, and when this court, which has jurisdiction over this *status* by reason of the domicile of both parties, it has power under our statutes to pronounce a decree thereon for payment out of the property of the defendant within its jurisdiction, which is binding within its jurisdiction, and to pronounce such decree upon service on a defendant domiciled

Hervey v. Hervey.

herein by publication as against him as an absent defendant under the statute, if he has no dwelling or place of abode within the state where service of process can be made by statute. The following are the facts which I find to have been proved in reference to the defendant's residence and domicile: Defendant, in October, 1895, being then still under age and a clerk in a New York store, resided in Newark, which was the domicile of his father, and on Riverside avenue, where he boarded and lodged with one Mrs. Dutch. About that date he was very seriously injured in an accident and was taken from his then residence to a hospital, where he remained until about April, 1896, when he went to his father's residence, 128 Montclair avenue, in Newark. He was still an invalid, unable to care for himself, but gradually improved, and after two months was at summer resorts in and out of the state for his health, and traveling until near the 1st of November, returning to his father's residence two or three times during this interval. Shortly before November 1st, 1896, he returned to his father's house in Newark, and made that place, and no other, his place of abode from that time until he left Newark, on December 12th. The defendant's claim that his residence still continued at Mrs. Dutch's is not supported by the evidence. About November 1st he entered into the real estate business with partners, at Newark, and this fact, I think, shows conclusively that no intention to remove to a milder climate then existed. On November 28th he was married to complainant at the residence of her brother-in-law, 127 Montclair avenue, directly opposite the residence of defendant's father, and the defendant gave the latter place as his residence in reply to questions by the minister performing the ceremony. The complainant was pregnant at the time of the marriage and immediately applied to defendant to care for her and take her somewhere with him, but after interviews on the two or three following days defendant failed to make any provisions for her, and after December 2d did not visit his wife. On that day an account of the marriage, which had been in the meantime kept quiet, appeared in the newspapers, and defendant says that when this came out he

determined to leave the state. ∙ He did not disclose this inten-
tion to his wife. Between this date and December 10th he
dissolved his partnership, conveyed the real estate stand-
ing in his name to his father and his partner, and trans-
ferred to his father other property. His trunk was packed
and left in his father's house to be afterwards sent for,
and on December 12th, defendant, with a coat-case, left his
father's house in a manner to avoid observation, and took the
train for Washington, where he stayed a few days. His visit
there was, however, not for the purpose of remaining, but for
the purpose of bidding good-by to a friend. While there he
engaged passage for Cuba, on the steamer sailing December 23d,
and wrote to his father, at Newark, to send his trunk. The
father brought the trunk to the steamer and saw him sail. On
arriving in Cuba, December 29th, defendant traveled for two or
three weeks in the island and then took a sailing vessel for
Mexico, and finally reached the City of Mexico, where he stayed
two or three weeks. He says that while in the City of Mexico
he made an arrangement for going in business with persons he
met there. These arrangements, however, were not consum-
mated, and he returned to the United States, arriving in New
York early in February. He remained there up to the time of
the hearing in April, 1897, subject to the directions of his coun-
sel. On this state of facts I think it is clear that the legal domi-
cile of defendant for the purposes of jurisdiction in this suit, at
the time of the filing of the bill and of the services of the sub-
pœna and notices, was in this state, and that the domicile of his
origin and choice had not been at that time, or up to the hear-
ing, abandoned for another. His intention to leave New Jersey
was for an indefinite time, and from his acts, which, in cases of
this character, are better indications than his words, I think the
proper inference is that he left the state for the purpose of avoid-
ing the obligations now sought to be enforced, and that his
absence from the state and residence in any other place, either
permanently or temporarily, depended mainly upon the course
which these and other proceedings to reach the property he
owned immediately before the marriage may take. ∙I see noth-

Hervey v. Hervey.

ing in the evidence to justify the conclusion that the defendant has as yet any other domicile than this state. Applying to these facts, therefore, the principles above stated, I hold that there is jurisdiction in this court to make a final decree for payment of maintenance out of his property within this jurisdiction, based upon the domicile of both parties and its control over the *status* by reason thereof. This being the case, the order for temporary alimony should not be set aside because of the manner in which the notice of application for it and of the proceedings therein were served. Under all the facts now shown, service of notice of the application at the residence of his father was the best notice which could have been given, and the notice which the court would have directed had the facts now shown been proved. As to setting aside the service of the subpœna, application for this purpose was not strictly within the terms of the leave and special appearance, but this was no doubt due to oversight, and the petition which includes the application to set aside the service of the subpœna was not objected to on this ground at the hearing. The question of the legal service of the subpœna was fully argued, and decision of this question comes up regularly on this branch of the petition. The subpœna, under the statute, must be served at the " dwelling-house or usual place of abode." This means, as the courts construe these statutes, the place of actual abode at the time of the service, not a *legal domicile*. *Stout* v. *Leonard, 8 Vr. 492, 495.*

The evidence shows, in my opinion, that his father's residence was not at the time of the service the actual place of abode of the defendant, for the reason that he had left the state with the intention of remaining out of it for an indefinite time, and that his father's residence after his departure ceased to be legally, within these statutes, his dwelling-house or place of abode. Had the absence been merely in order to escape service of process for a time and then return, such departure would not, according to many authorities, have changed his residence or place of abode under statutes providing for serving process at a residence or place of abode. *Reg.* v. *Farmer, 1 Q. B. 637, 641 (1892)*; *Queen* v. *Webb, 1 Q. B. 487 (1896)*. But the absence of any

intention to return again after a definite time, prevents the rule in these cases from being applied. The service of the subpœna must, therefore, be set aside and proceedings should be taken to bring in the defendant as an absent defendant. Absent defendants, in the language of the Chancery act (*Gen. Stat. p. 405 § 18 ¶ 172*), are defendants " who are out of the state or cannot on due inquiry be found herein, or who conceal themselves within the state."

Order will, therefore, be advised setting aside the service of subpœna, but denying the prayer of the petition to set aside the order for alimony *pendente lite* and the proceedings thereon.

The leave to enter a special appearance was granted in this case without terms, but as a matter of practice it should be stated that the more correct practice seems to be to require, as a condition of granting such leave, that there be inserted in the order an undertaking or stipulation that the defendant would submit without further process to the orders of the court, if the point should be decided against him. *Romaine* v. *Insurance Company, 28 Fed. Rep. 625* (*Hammond, District Judge, 1886*). The plain reason is that the special leave without such condition places the defendant in the position of drawing the opinion of the court without any risk, for if the court has no jurisdiction by reason of failure to serve process, its decision that it has such jurisdiction does not settle this question so that it may not be questioned after judgment and in any court. Unless, therefore, the defendant agrees to come in if the decision on the point of jurisdiction is against him, he should as a general rule be left to question the jurisdiction of the court in a form where all parties will be bound.

The application in this respect is on altogether different footing from one in which a defendant, appearing generally in the cause and submitting to the jurisdiction of the court, applies to set aside an order for irregularity, or to be heard on the merits, for decisions on such applications will be finally settled in the cause itself.