American Salpa Corporation was adjudged insolvent and statutory receivers appointed, by decree advised by Vice-Chancellor Fallon, May 4th, 1931. Subsequent proceedings in the administration of the insolvent estate have been had before Vice-Chancellor Fallon, in the usual course, pursuant to rule 131 (3) — including the usual order to limit creditors.
Bank of Manhattan Trust Company, is, or claims to be, a creditor of the insolvent company, holding notes of some $275,000 secured by two mortgages covering the property of the company. The bank filed with the receivers its proof of claim as creditor, specifically setting forth the mortgage security and reserving its rights as mortgagee.
In March, 1932, the receivers concluded it was their duty on behalf of the general creditors to attack and dispute the validity of the mortgages; and on March 22d 1932, by authority of an order in that behalf, they filed a bill in this court to set aside the mortgages as invalid. The bank gave notice to the receivers of an application to remove the cause to the federal court on the ground of diversity of citizenship. The receivers immediately obtained an order in this court dismissing their bill on their own motion, without prejudice.
Shortly thereafter, on April 27th or 28th, 1932, the bank served notice upon the receivers, purporting to withdraw its claim, previously filed as aforesaid. A day or two later the receivers served notice on the bank, purporting to disallow the bank's claim of lien by virtue of the mortgages, but allowing the entire indebtedness as a general, unsecured claim; and obtained an order from this court limiting the time for appeal by the bank from that determination of the receivers, to June 1st, 1932.
May 25th, 1932, the solicitors for the bank applied to the late Chancellor Walker and obtained ex parte an order authorizing the bank to appear specially in this court in this proceeding, solely to the extent and for the purpose of applying for an order vacating the action of the receivers in purporting to disallow the mortgage lien and vacating the order limiting time for appeal from such disallowance, on the ground of the *Page 249 
lack of jurisdiction by the receivers and by this court in this proceeding, over the subject-matter of the validity of the said mortgages, and the lack of jurisdiction of the said receivers and of this court to make the orders in question.
Pursuant to such order, special appearance in accordance therewith was filed by the bank, May 26th, 1932, and ex parte
application was made by the bank on petition to vacate the said disallowance of lien by the receivers and the said order limiting appeal, on said ground of lack of jurisdiction; and Chancellor Walker, on June 1st, made an order on the receivers to show cause why an order should not be made vacating the disallowance and the limitation of appeal. This order to show cause was made returnable at Newark before Vice-Chancellor Bigelow; with interim stay as to proceedings in the meantime affecting the bank's rights under the mortgages.
On June 8th, 1932, the receivers served notice on the bank that they would apply to Chancellor Walker on June 14th, to vacate the order of May 25th, 1932, authorizing the entry of the special appearance, and to vacate the order to show cause of June 1st, 1932, and if such relief should be denied, then to modify the order of May 25th, so as to require the bank to submit generally to the jurisdiction of this court in this cause, if the issue of lack of jurisdiction should be determined against the bank on the hearing of that special issue. These motions were never brought on before Chancellor Walker, but were continued from time to time both before and after his death, by agreement of both sides, until the present time.
The first reason assigned, as ground for the motion to vacate the order authorizing the entry of special appearance, is that that order was made on an ex parte application. This objection is without weight. Spoor-Thompson Machine Co. v. Bennett FilmLaboratories, 105 N.J. Eq. 108 (at p. 112). Moreover, the receivers have on this present motion the opportunity of presenting their arguments against the permission to enter a special appearance.
The second ground is that the petition does not set forth any facts legally entitling it to file such special appearance. This objection is also deemed untenable. *Page 250 
A special appearance is, or may be, necessary, and in any event is proper, where a party seeks to make or oppose a motion in a cause in which such party has filed no formal general appearance and no plea or answer, and desires to dispute and deny the jurisdiction of the court in the cause and to avoid having such alleged lack of jurisdiction cured by the effect of a general appearance. Groel v. United Electric Company of New Jersey,68 N.J. Eq. 249. Certainly no greater showing is necessary, on application for leave to enter such special appearance, than that the applicant (1) is a party to a cause or proceeding in this court; (2) has a bona fide, prima facie claim that the court is without jurisdiction to make a valid decree against him in the proceeding; (3) has a bona fide, prima facie claim that he has done nothing to waive such alleged lack of jurisdiction; (4) desires the opportunity to seek to establish such alleged lack of jurisdiction without thereby waiving or curing the alleged defectiveness in that behalf.
All of these things appear by the petition for leave to enter the special appearance — that the bank is a foreign corporation; that it has the mortgages in question; that the receivers in this insolvent corporation administration proceeding have purported to adjudge and declare those mortgages invalid; that such purported adjudication was made without notice to, or opportunity to be heard on the part of, the bank; that this court in this same proceeding has purported to limit the bank's right in respect of such adjudication, to an appeal within some thirty-odd days; that neither the receivers nor this court had jurisdiction in this proceeding to make any valid adjudication or decree as against the bank; that the bank has done nothing to give the said receivers or this court jurisdiction, in this proceeding, to make any valid adjudication of its said mortgages; and that it desires to contest the validity of such adjudication and decree on the sole ground of such alleged want of jurisdiction, and asks that leave and opportunity be given it so to do.
It seems scarcely necessary to point out that it is not necessary for the bank to establish the alleged lack of jurisdiction, *Page 251 
but only, at most, to show that it has a bona fide claim in that behalf. The application by the bank was not for the purpose of establishing the lack of jurisdiction, but only for leave and opportunity to seek to establish that, at a proper hearing.
The fourth ground is that the relief sought by the petition can be granted only on appeal to this court from the determination of the receivers, as provided by section 78 of the Corporation act. This argument also begs the very question which is to be determined on the special hearing. Several of the bank's arguments as to lack of jurisdiction include the contention that the receivers had no jurisdiction, either under the authority of the Corporation act, or otherwise, to adjudicate on the validity of the bank's mortgages. If the receivers had no such jurisdiction, then the provision as to proceedings by appeal is ineffective; or to put it conversely — it cannot here on this motion be decided that the bank is limited to a proceeding by appeal, without deciding (and hence prejudging) that the receivers did have jurisdiction.
The bank could, of course, raise the same objections as to jurisdiction in a proceeding by appeal, but it is obviously safer for it not to do so, as such a course might be argued as a recognition by them, in some sort, of the validity of the receivers' acts and proceedings.
The fifth ground is that the bank did not file its petition in good faith, because its intent and purpose is to oust this court of jurisdiction, and to remove the cause to the federal court. No merit can be found in this argument. In the first place, the petition seeks to have this court itself determine the question as to its jurisdiction — (and the jurisdiction of its officers, the receivers) — the bank has submitted that question of jurisdiction to this court. There is no bad faith in that. In the second place, it does not follow that if this court should determine that the prior proceedings were without jurisdiction, that such determination would remove the cause to the federal court. In the third place, even if the ultimate result hereafter should be that the issue as to the validity of the mortgages be removed to the federal court, such removal can be had only if the bank has the right to such *Page 252 
removal, and if it has that right, it is certainly entitled to claim it and exercise it, if it so desires. No question of bad faith can possibly be predicated thereon. The bank assuredly has just as much right to seek (by legal and proper proceedings) to have that issue determined in the federal court as the receivers have to seek to have it determined in this court.
The sixth and last ground is that the application should have been made to Vice-Chancellor Fallon, instead of to the chancellor. It is true that by ordinary procedure under the rules, the application should have been made to Vice-Chancellor Fallon, who appointed the permanent receivers in the proceeding. Rule 131 (3). That rule, however, like all the other rules, are only rules made by the chancellor. The chancellor has unquestionably the right and the power to abrogate them, modify them, or fail to observe them, if he choose — at least so long as no harm or prejudice thereby results to any party. There is no intimation that the chancellor's personal entertainment of the petition, instead of requiring the application to be made before Vice-Chancellor Fallon, has in anywise resulted to the detriment of any party; nor is it perceived how any such detriment could possibly result.
The reasons which moved Chancellor Walker to entertain the application himself do not appear of record and are not known to me. Presumably, from the very fact of his promulgation of the rule mentioned, his natural and ordinary inclination would have been to see that its provisions were observed. Hence his departure from its provisions (if it was a departure — for the rule itself provides that applications may be made in emergency to other members of the court), necessarily implies that his course was predicated upon what he deemed proper and sufficient reasons. To ask me to set aside his act is necessarily to ask me to declare that his act was erroneous and improper, and an abuse of his undoubted constitutional right — and this without knowledge on my part as to the reasons upon which his action was based. Nothing more need be said on this score.
The grounds specified as reasons for the motion to vacate the order to show cause of June 1st, 1932, are practically the *Page 253 
same as those for the motion to vacate the order authorizing the entry of the special appearance — hence need no further or separate comment, except perhaps upon one point. Under the usual procedure under the chancery rules the order to show cause, even though made by the chancellor or another vice-chancellor would have provided that it be returnable before Vice-Chancellor Fallon. It was suggested on the present argument that the provision making the order to show cause now in question returnable before a vice-chancellor other than Vice-Chancellor Fallon was therefore erroneous and might be deemed an imputation against Vice-Chancellor Fallon or a reflection upon his conduct of the other proceedings in the cause.
For the same reasons hereinbefore set forth, there is nothing whatever before me which could in anywise warrant an adjudication by me herein that the order of my predecessor was erroneous, improper and an abuse of his discretion. An order vacating the order to show cause or modifying it in that behalf would obviously amount to an adjudication of just that kind, and will certainly not be made by me in the absence of anything in the nature of proofs to warrant it. Let it be understood, however, that there is nothing either in my denial of the motion to vacate, or in the making of the original order by Chancellor Walker, which in anywise impugns Vice-Chancellor Fallon or his conduct of the proceedings in this cause — nor have I had any intimation from Vice-Chancellor Fallon that he has any such belief. Variations from the usual procedure under the rules, while not frequent, are nevertheless made from time to time, without in anywise casting reflection on anyone involved. In instances such as the present, the reason may have to do with the respective states of the calendars of various vice-chancellors; or the fact that a particular vice-chancellor had had particular experience with an issue involved, and hence could hear and dispose of it with less time and trouble than another; or many other reasons.
Some expression was made at the argument from which it might be inferred that it was charged or believed that Vice-Chancellor Fallon was prejudiced against the bank in this *Page 254 
matter and that that was the reason for the reference of the special issue to Vice-Chancellor Bigelow. The record discloses no basis whatever for any such charge or belief. It is evident from the record that the controversy between the parties to the present motion is as to where the issue as to the validity of the bank's mortgages shall be tried. The bank is strongly desirous that that issue shall be tried in the federal court. The receivers are equally desirous that it shall be tried in this court. They have just as much right to use all lawful means in the endeavor to accomplish this as the bank has to endeavor to effect a contrary result. The natural tendency and attitude of this court would be toward preserving its own jurisdiction, and the preliminary rulings and orders made by Vice-Chancellor Fallon go no further than that, and are such as would have been made by any other vice-chancellor or by myself. They afford no ground whatever for belief or suspicion contrary to the natural expectation that if, and when, he should be called upon to determine the actual issue of jurisdiction, he would be able to, and would, decide that issue fairly and impartially upon the facts and the law as presented to him upon such occasion.
I have disposed of all of the matters presented on these motions, with the exception of the application to modify the order permitting special appearance, by adding a conditional provision to the effect that if the issue of jurisdiction (for which the special appearance is asked) be decided against the bank, its appearance shall then be deemed and considered a general appearance. That such a condition should be imposed in an order permitting the entry of special appearance seems to be the settled rule and practice. Hervey v. Hervey, 56 N.J. Eq. 166;Swetland v. Swetland, 105 N.J. Eq. 608 (at p. 619), and cases cited. I understand that this is conceded by counsel for the bank, and that the addition of such condition is not opposed. It will be so ordered; in all other respects the motions will be denied. *Page 255