GRAVES v. GRAVES.

1. **Alimony: MAY BE GRANTED WITHOUT DIVORCE.** A court of equity will entertain an action brought for alimony alone, and will grant the same, though no divorce or other relief is sought, where the wife is separated from the husband on account of conduct on his part justifying the separation.

2. —— Such jurisdiction will be entertained on the ground of preventing a multiplicity of suits, or of inadequacy of relief at law.

3. —— The reasons for the denial of such relief in the ecclesiastical courts, and a like denial in the English chancery and in many of the American equity courts, stated by COLE, J.

*Appeal from Story District Court.*

THURSDAY, APRIL 10.

ACTION to recover alimony, brought March 20, 1871. The plaintiff alleges, that she and the defendant were duly married on the 28th day of May, 1867, in the State of New York; that she then had property worth $138, which defendant converted to his own use; that they at once removed to the State of Wisconsin, where they lived together till May, 1869; that she then, at the defendant's request, returned to her friends in New York, where she has ever since remained; that as the fruit of the said marriage, she had born a daughter, now aged about two years. That immediately after plaintiff left for New York, the defendant was guilty of adultery with one Augusta, and had continued ever since to live in adulterous intercourse with her; that defendant is worth $6,000, and has failed to support the plaintiff or their child, and that both are in destitute circumstances; that it costs $50 per month to support them, and she asks an allowance and judgment for that amount from May 11, 1869, to date, and for $300 to pay attorney's fees, etc.

The defendant denies the several allegations of the petition, except the marriage, the living together, and plaintiff's return

to New York, and avers that he has not sufficient knowledge to form a belief whether the child is the fruit of the marriage. And he also sets up, that in March, 1871, he obtained a divorce from plaintiff in the district court of Polk county, and set out a copy of the decree.

The plaintiff by reply averred that the decree was obtained by fraud, and that the court had no jurisdiction of the parties, either by residence or notice.

On the 6th day of March, 1872, the cause was tried to the court, who found that the parties were lawfully married, March 28, 1867, and lived together in Dodge county, Wisconsin, until the 11th day of May, 1869, and that the child, Lydia S., was the fruit of the marriage; that on the day last named, the defendant without cause deserted the plaintiff and came to Story county, Iowa, and has ever since lived in open adultery with an abandoned woman, and has failed and refused to provide for either his wife or child, or furnish them any means of support. It also appears that the defendant never resided in Polk county, where he obtained a decree for divorce; that the cause assigned for it was false and fraudulent, and there is nothing to show that any notice whatever was ever given to, or served upon the wife, the defendant in that action.

The district court thereupon rendered a judgment for the plaintiff, for $850 for past support, and $150 to pay attorneys, and also ordered that defendant pay to plaintiff $25 per month, commencing March 11, 1872, payable semi-annually, for the alimony or support of the plaintiff and her child, during her life, or so long as the bands of matrimony exist, and made the same a lien upon the defendant's real estate, describing it.

The defendant appeals.

*Dana & Balliett* for the appellant.

*J. S. Frazier* and *John A. McCall* for the appellee.

Cole, J. — The main question involved in this controversy is, whether a court of equity has the authority or jurisdiction

to entertain an action brought for alimony alone, and to grant such alimony where no divorce or other relief is sought ?

It is true, beyond controversy, that the great weight and number of the English authorities deny such jurisdiction. And it is, perhaps, also true that the number and possibly the preponderance of the American authorities are in accord with the English. But there are well-considered cases and authorities of great weight which affirm the jurisdiction. Judge STORY says, of these latter, that "there is so much good sense and reason in the doctrine that it might be wished it were generally adopted." 2 Story's Eq. Jur., § 1423 *a*.

In England, formerly, the jurisdiction respecting alimony was exercised by the ecclesiastical courts, and the nature and purposes of those courts were foreign to that of granting mere pecuniary aid or relief. Such relief could only be granted there as an incident to other relief connected with the special matters within the cognizance of those tribunals. And hence alimony was not granted except in cases where a divorce either of *a vinculo* or *a mensa et thoro* was first sought for and obtained, and then it was granted as an incident and necessary in order to complete relief in respect .of the principal matter of divorce, over which those courts had primary and plenary jurisdiction. It was very natural, therefore, that when courts of equity came to exercise jurisdiction in divorce cases they should feel bound by the precedents, in such matters, which had been established by the ecclesiastical courts, theretofore exercising that same jurisdiction. And this too seems to have been done without any consideration of the fact that the inherent powers of the two courts were essentially different. And it was also equally natural that our American courts, exercising the English chancery jurisdiction, should look to and follow the precedents established by like courts in the mother country. In this way it is possible to account for the original current of authority as above stated and which we regard as contrary to the better reason and to principle.

That a husband is bound, both in law and in equity, for the support and maintenance of his wife is a proposition hitherto

and now undisputed. If by his conduct he makes it unsafe, or by entertaining others there he makes it immoral for her to remain at his home, she may leave it and him and carry with her his credit for her maintenance elsewhere. So that, in such case, a victualler, a merchant, a dressmaker, a milliner, a shoemaker, a laundress, a physician, a lawyer, or any dealer in the necessaries of life may severally supply the wife with the articles needful and proper in her situation, and may respectively maintain their actions against the husband for their value. This remedy the law affords. But this involves multiplicity of suits; and besides the remedy is by no means adequate. The wife may find it difficult, if not impossible, to obtain a continuous support in this way, since such dealers and professional men would be unwilling to supply their articles or services if thus compelled to resort to litigation in order to secure their pay. Here then is a plain legal duty of the husband for the violation of which no adequate remedy, even with a multiplicity of suits, can be had, except in a court of equity. Upon the ground of avoiding a multiplicity of suits, or on the ground that no adequate remedy can be had at law, a court of equity may properly base its jurisdiction in such cases.

And, under our law, we do not see, since the husband owes this obligation of maintenance to the wife, as well as to the public, why she may not, independent of any other ground, maintain this action against him. For it was held by this court, in *Jones* v. *Jones*, 19 Iowa, 236, that a wife who has abandoned her husband for cause, or been by him driven from his home without cause, may maintain an action of replevin against him in her own name, to recover a bureau, table and other articles of household furniture owned by her at the time of the marriage and taken by her into the family and there used for eight years or more during their co-habitation. This case establishes the right of the wife under our law to maintain an action in her own name against her husband for the enforcement of her proper rights. The question here involved has never been before, or decided by, this

court. In one or more cases the common-law rule denying the right of the wife to maintain such an action has been referred to, or stated in argument; as in *O'Hagan* v. *O'Hagan*, 4 Iowa, 509, (*i. e.* 516, 517); *McMullen* v. *McMullen*, 10 id. 412. Of course it is necessary that she shall establish not only the fact of separation but also that such fact rightfully and properly exists, by reason of the wrongful conduct of the husband, and without fault on her part. This wrongful conduct of the husband may be such as would (as in this case) form a sufficient ground for her divorce ; yet an affectionate, devoted and hopeful wife may still not desire a divorce, by reason of her belief that she may reclaim him, and make him worthy of her love, notwithstanding his fall. But, during the period of her forbearance and efforts at reclamation, she is entitled to and must have her maintenance. It seems to us, that upon well-settled equity principles, as well as upon considerations of public policy, the action may be maintained without asking a divorce or other relief. See *Galland* v. *Galland*, 38 Cal. 265 ; S. C., 9 Am. Law Reg. (U. S.) 463, and cases cited.

Upon the facts proven in this case, it is manifest that the husband has been guilty of the highest crime he could commit against the wife — that of adultery; and also, that the wife is without fault. Her reputation is abundantly justified. The alleged decree for divorce, obtained by the husband, was without any notice to the wife, in a county wherein neither party ever resided, and for an alleged cause wholly fraudulent and false ; it is therefore void. The allowance of $25 per month as alimony is certainly not unreasonable ; nor is the allowance for an attorney's fee shown to be excessive or improper. But in the absence of all showing that any obligations or indebtedness have been incurred by the wife, or that any claims are outstanding on account of her maintenance prior to the commencement of this action ; and in view of all the facts in this case, we are not prepared to allow any thing for maintenance prior to the commencement of this suit. The judgment of the district court will, therefore, be so modified

as to reject the claim for past maintenance, and make the monthly allowance begin with the date of the suit, March 20,. 1871, and in all other respects will be

Affirmed.