OF

## THE STATE OF IOWA

AT

## DES MOINES, JANUARY TERM, A. D. 1899,

AND IN THE FIFTY-THIRD YEAR OF THE STATE.

---

CONRAD MAY, Plaintiff and Appellee, v. LOUSA MAY, Defendant, Appellant

Divorce: CONNIVANCE IN ADULTERY. Adultery of a wife, committed with a spy employed by the husband to test the wife's virtue, does not entitle him to a divorce.

CONDONATION. A husband's acts of cruelty, for which the wife is largely to blame, are condoned by her failing to make complaint, apologizing for her own conduct, and continuing to live with him, where no future danger to her life or health are to be apprehended.

*The figures on the left of the syllabi refer to corresponding figures placed on the margin of the case at the place where the point of the syllabus is decided.

*Appeal from Dubuque District Court*—Hon. FRED O'DON-
NELL, Judge.

THURSDAY, APRIL 6, 1899.

SUIT in equity for a divorce. The defendant also
brought a like suit against the plaintiff, and the two actions
were consolidated; defendant's petition being treated as a
cross bill. The trial court denied the relief asked by each,
and both parties appeal. As defendant first perfected her
appeal, she will be called the "appellant."—*Affirmed.*

*Longueville, McCarthy & Kenline* for appellant.

*Lyon & Lyon, John B. Utt* and *Matthews & Barnes* for
appellee.

DEEMER, J.—I. Plaintiff and defendant were married
at Jamestown, Wis., on or about November 23, 1877, and
lived together as husband and wife until February 19, 1897.
Five children were born to them. For many years there
have been frequent quarrels between them, which finally
culminated in what we will denominate the "McGregor inci-
dent," which will be hereinafter referred to. Plaintiff has
been almost insanely jealous of his wife; and, to say the least,
her conduct has not at all times been discreet. We are satis-
fied, too, that plaintiff has at times shamefully abused the
defendant; but many of their quarrels were provoked
by the wife. It is charged in the petition that defendant
has been guilty of adultery with at least four different per-
sons. Defendant denies that she was guilty of adultery with
any of them, and alleges as grounds for divorce from plain-
tiff that he has been guilty of such cruel and inhuman treat-
ment as to endanger her life. There is evidence in the
record tending to show unlawful and illicit relations between
defendant and three different men. As to one, it produces
no more than a suspicion of improper conduct, but as to the

other two it is direct. Notwithstanding its directness, we are satisfied that there is no truth whatever in the claim that she had intercourse with one of these two men. It appears, without dispute, however, that in the month of February, 1897, defendant left her home in Dubuque without notifying any of her family that she was going; went to the town of McGregor, part of the way in company with a man by the name of Blanchard, who assumed the name of Brown; and then went to an hotel, where Blanchard registered the two as E. H. Brown and wife, from Chicago, who were assigned to a single room. Blanchard introduced defendant as Mrs. Brown, and was in her room, in conversation with her, during the evening. Early the next morning, plaintiff appeared upon the scene, was shown to the room where defendant was staying, and there a controversy arose between them as to what had occurred between her and Brown during the night. There is a dispute as to the length of time Brown was in the room, and as to what occurred there, and the witnesses do not agree as to what was said when plaintiff appeared. There is also some little dispute as to what defendant's purpose was in leaving home. We are satisfied, however, that she thought she was going to Elkader, and that she did not know she had to stay over night in McGregor.

On the one hand, it is contended that defendant committed adultery with Blanchard, alias Brown, in the hotel, on the night in question; while on the other it is stoutly contended that, while the defendant may have been indiscreet, yet she did not have any illicit relations with Blanchard, and that whatever was done was with the husband's connivance and consent. We do not find it necessary to determine which is right in this contention, although we may say that defendant's conduct was, to say the least, very injudicious. But, if it be conceded that the act of adultery was in fact committed, plaintiff is in no position to take advantage of it. The evidence very clearly establishes the fact that plaintiff induced Blanchard to go to his

home, to act as a spy, to see if he could not discover the wife
in the act of adultery.   He lived there in that relation for
some time before he induced the defendant to go to McGregor,
and she went on the false pretense that she was to go to
Elkader to visit friends.   Not only was Blanchard invited
into plaintiff's home for the purpose of procuring evidence
against his wife, but we are also satisfied that he was
employed by plaintiff for the purpose of having intercourse
with the defendant, if he found it possible to do so.   If,
then, Blanchard did have intercourse with defendant, it was
with plaintiff's consent, and through his connivance, and he
cannot be heard to complain.   *Cane v. Cane,* 39 N. J. Eq.
148.   "That to which a party consents is not esteemed, in
law, an injury," is an old maxim, which is especially appli-
cable to such a case as this.   From the fact that the husband
appeared upon the scene at the time he did, it is quite evi-
dent that he knew of the whole plan, and, in effect, consented
to it.   A court of equity will not grant relief under such cir-
cumstances.   *Pierce v. Pierce,* 3 Pick. 299; *Hedden v. Hed-
den,* 21 N. J. Eq. 61; *Myers v. Myers,* 41 Barb. 114.   Plain-
tiff has no right to complain of his wife's conduct at
McGregor.   The other acts of adultery alleged by plaintiff
are not sustained by sufficient evidence to justify a decree in
his favor, and the trial court was right in dismissing his
petition.

II.   The evidence introduced by defendant shows that
plaintiff has been guilty of various acts of cruelty, which
would ordinarily entitle her to a divorce.   But here it
appears that she was in many, if not in most instances,
to blame.   Barring certain conduct of plaintiff, which
occurred so long ago that the presumption of condona-
tion obtains, it appears that defendant persisted in keeping
company with a certain man against the plaintiff's protests.
Whenever he discovered that she had been in this man's com-
pany (and we may remark parenthetically that we find no
evidence of anything more than the slightest improprieties

between them), a controversy arose, which always resulted in hard words between them, and sometimes blows. Defendant was to blame for not observing her husband's admonitions about not talking to, or being in company with, this man; and generally she took her own part in the quarrels which resulted after she had disobeyed these instructions. In other words, she at times provoked the plaintiff into making his assaults, and at others made an assault upon plaintiff herself. But, aside from all this, she continued to live and cohabit with her husband down to within a few days of the McGregor incident. She made no complaint of his conduct, but apologized for her own, and seemed content to live with him to the very last. Her conduct clearly amounts to a condonation of her husband's offenses, serious as some of them may have been. *Gardner v. Gardner*, 2 Gray, 434; *Phillips v. Phillips*, 27 Wis. 252; *Douglass v. Douglass*, 81 Iowa, 258. It goes without saying that if we were satisfied that plaintiff's acts of cruelty would be repeated, and that there is danger to defendant's life or health, should she continue to live with the plaintiff, we would be slow to find that condonation should avail the plaintiff in defending against his wife's petition. This does not appear, however. Indeed, there is little, if any, evidence that defendant's life or health were ever endangered. She seemed to be content to live with her husband during all the years he was practicing his cruelty, and we do not think had a thought of bringing a divorce suit until plaintiff began his action. Under such a state of affairs, we may well doubt defendant's sincerity in bringing her suit. We are not to be understood as holding that defendant was guilty of adultery at the town of McGregor, or that plaintiff's conduct towards his wife is to be approved. We simply find that neither party is in position to obtain a decree of divorce. The case is peculiar in many of its aspects, and is an extremely unfortunate one for both of the parties. They have children, who they are each anxious should procure a good education—two of them being in the

high school in the city of Dubuque—they have ample means to provide for the necessities, and most of the luxuries of life; and there is every reason why they should live together harmoniously as husband and wife. Plaintiff, as we have said, is extremely jealous, and defendant may not have been entirely discreet in her conduct; but due consideration by each of the feelings and conduct of the other ought to remedy all evils, bring these parties together, and effectuate a reconcilliation which will be lasting. The decree of the district court is, on both appeals, AFFIRMED.