MAYME SHIPLEY, Appellee, v. EVERETT SHIPLEY et al., Appellants.

HUSBAND AND WIFE: Separate Maintenance—Decree on Publica-
1 tion Service. Property situated in this state, belonging to a nonresident husband, may be taken, on publication service, for the separate support and maintenance of the deserted wife and child, and for the costs attending the action.

HUSBAND AND WIFE: Separate Maintenance—Desertion for Less
2 Than Two Years. Principle recognized that action for separate maintenance and support may be maintained though desertion has not ripened into ground for divorce.

*Appeal from Cedar District Court.*—F. O. ELLISON, Judge.

DECEMBER 19, 1919.

ON February 14, 1919, plaintiff instituted suit against her nonresident husband for separate support and maintenance, and also that of their daughter, and for custody of the latter. She prayed that the costs of the suit, including attorney's fees and temporary support, be allowed, and, on final hearing, for permanent support of $100 per month; that defendant W. B. Piatt, trustee of an estate left by the husband's mother, deceased, be ordered to make payment thereof from the income derived from the trust estate; that a writ of attachment be issued; and for such other and further relief as might be equitable. The husband was served with notice by publication only. A writ of attachment was issued, and the trustee duly served with notice of garnishment. Default was entered against the husband. The trustee answered. Hearing was had on the allegations

charging desertion, and praying relief against the husband, April 1, 1918, and decree was entered, granting plaintiff separate support for herself and daughter, with custody of the latter, $400 for such support up to that time, $100 per month thereafter, and $200 attorney's fees and costs, and ordering that the same be paid from any income from the trust estate in the trustee's hands at the time of the garnishment; and hearing of the issues raised by the answer of the trustee and amendments thereto was postponed, and defendant Shipley's interest in the funds now or thereafter coming into the trustee's possession subjected to the payment of the above sums. Further hearing was had June 12, 1918, and, on August 14th of the same year, a decree was entered, finding the amount of income in the trustee's hands sufficient to pay all sums above specified, with $400 for support since April 1, 1918, $200 additional for attorney's fees and costs, and that the amounts in the trustee's hands were sufficient to pay all said sums, and ordering the trustee to pay same to the clerk of court for the use of plaintiff, and that the trustee take credit for said sums so paid in his accounting as trustee, and that, from the income coming into his hands thereafter, the trustee pay to said clerk for the use of plaintiff, the installments thereafter accruing, to wit, the sum of $100 per month. All said payments to be made by said trustee were decreed proper charges against the income of the trust estate, and that the trustee be entitled to credit therefor as against the *cestui que trust,* in the accounting of said trustee. The court further found that the trustee was garnished under the writ of attachment issued in this cause, and was also made party defendant hereto; that this decree adjudicates all issues between the parties; and that the defendant has failed to sustain his plea of abatement. The trustee, W. B. Piatt, appeals.—*Affirmed.*

*C. O. Boling,* for appellants.

*W. G. W. Geiger* and *C. J. Lynch,* for appellee.

LADD, C. J.—Plaintiff was married to defendant Shipley February 2, 1910. There was born to them, about a year later, a daughter, Helene by name. In a decree entered

1. HUSBAND AND WIFE: separate maintenance: decree on publication service.

April 1, 1918, he was found to have deserted his wife, and she entitled to the custody of the daughter, then about 7 years old, and to separate support and maintenance. As

service was by publication, personal judgment might not have been rendered against him for support. *Rea v. Rea,* 123 Iowa 241; *Johnson v. Matthews,* 124 Iowa 255. Can allowance for separate support of the wife be taken from the nonresident husband's property or interest therein, found in this state, by decree subjecting same to the payment thereof? Shipley's mother, then a widow, died testate, April 16, 1905, leaving a will, which was duly admitted to probate, and, after directing that all debts and funeral expenses be paid, did "give, devise and bequeath unto my only son and child, Hermon Everett Shipley, all of my property, real, personal and mixed, wherever situate, for and during his natural life only, giving to him the full use and control of the same during his life. I expressly direct that he shall have no power to sell, assign, mortgage or incumber any of said property, nor shall he have any right to sell, assign, mortgage or incumber any of the interest, income, rents, or profits arising from any of said property. Neither shall he have any right to in any manner convey his life interest in said property. The intention being that he may have the interest, use, benefit, or rents of the same each year during his natural life." It further provided that, in event of the son's death, one third should go to his widow, and two thirds to his child or children; if without child or children, one third should go to the widow, and

the remainder to testatrix' brother and sister; and all to said brother and sister, if no wife or child should survive the son; but, if child or children should survive him, and no widow, all should go to the child or children. W. B. Piatt, brother of testatrix, was nominated executor, with complete power of disposition of any and all property, and was also named as trustee, with authority to take charge of all the moneys and property of the estate, upon settlement by the executor. Should the trustee resign or die, the district court was authorized to appoint another trustee in his stead. A codicil was executed, October 17, 1904, withdrawing this sentence from the paragraph quoted, "giving to him full use and control of the same during life," and adding that:

"In order that no misinterpretation may be placed upon any language contained in my last will, I direct that my son, Hermon Everett Shipley, shall not have the custody or control of any of my property. It is my will that he is only to receive the rents and income thereof from the trustee, subject to all of the provisions stated in my will."

Another clause conferred on the trustee "full power and authority to contract, lease, assign, sell, or convey any or all of my property on such terms and at such times, and in such a manner as to him may seem best, without any application to or approval by any court."

It will be noted that, though the trustee is given complete control of the estate, the entire income is subject only to such deductions as may be required for taxes, expenses of administration, and repairs, and the remainder is to be paid to the beneficiary. The estate consisted of a farm of 320 acres in Sac County, another of 160 acres in Emmet County, two dwellings in Tipton, and one dwelling in Des Moines, and bank and other stock, notes and the like, amounting to about $7,000. The evidence indicated that a net income of at least $2,500 per annum will be derived

from the property, beginning in 1918. The petition made both the husband, Shipley, and the trustee, parties to the suit, and therein alleged, in addition to grounds for separate maintenance, that Piatt was trustee; that he had in his hands and would receive the income from the said estate, for the defendant Shipley, and prayed that the trustee "be ordered and directed to make .payment from the income in his hands and thereafter coming into his hands, the allowance awarded to plaintiff," and "for other and equitable relief." Notice thereof, including the relief prayed as against the .income payable to Shipley, was served on Shipley by publication, and the trustee appeared and answered. Default was entered against Shipley, and, on hearing, decree was entered, April 1, 1918, finding plaintiff entitled to separate maintenance, and the custody of the minor child, and fixing the attorney's fees to be paid, and the allowance for support to which the wife was entitled from her husband. Further hearing of the issues raised by the answer of .the trustee was postponed until June 12, 1918, when evidence bearing on these issues was adduced, and a decree entered August 12th following, fixing the entire amount of fees for plaintiff's attorneys at $400, allowing for support prior to April 1, 1918, $400, and $400 since that time, and directing the trustee to pay to the clerk of the court for her support thereafter the sum of $100 per month, on the first day of each month, and that the trustee be credited in his accounting for the sums so paid, including the costs. The correctness of this order only is challenged, the right to separate maintenance being conceded.

The point necessarily involved is whether the court might enter such a decree against the nonresident husband on service by publication. The trust estate, as well as any income derived or to be derived therefrom, was within the territorial jurisdiction of the court entering the decree,

as was also the trustee. The latter was indifferent, legally, as between the parties, and might have credit for all moneys paid out under the court's order, in his accounting as trustee. The income was brought within the jurisdiction of the court quite as completely as though attached through garnishment of the trustee. The only advantage possible through the levy of a writ of attachment would be in holding the accumulated income in the trustee until the rights of the parties were adjudicated. This appears from *Twing v. O'Meara*, 59 Iowa 326, where the wife, in bringing suit for divorce in Wapello County, sued out a writ of attachment for $2,200, and caused the same to be levied on land in the husband's name in Scott County. Service of notice was had by publication, and, on final hearing, the decree entered vested her with title to this real estate, found to be of the value of $600. Her title thereto later was challenged, but sustained, the opinion declaring that "the court would have been justified in decreeing the property to Elizabeth Twing as alimony if no attachment had been procured. There was no necessity whatever for the attachment, except to prevent the defendant in that action from alienating his property before a decree could be obtained." See *Scott v. Rogers*, 77 Iowa 483. Some reliance was had on *Harshberger v. Harshberger*, 26 Iowa 503, where the notice was by publication, and the alimony allowed was made a lien on the property of the defendant.

A like conclusion was reached in *Wesner v. O'Brien*, 56 Kan. 724 (32 L. R. A. 289, 54 Am. St. 604). There, Annie O'Brien had obtained a decree of divorce against her nonresident husband, which also set apart certain land as alimony to the wife. Subsequently, she transferred it to Wesner. The husband, Enoch O'Brien, instituted an action for the recovery of this land. On hearing, the record of the divorce proceedings was excluded from evidence, on the ground that it appeared that O'Brien had no other than

constructive notice, and that the land was not in the county where the suit was pending. The statutes of Kansas, relating to service of notice on nonresidents and the award of alimony, were substantially like those of this state, and the court, after reviewing authorities, said:

"Did the district court of Johnson County exceed its jurisdiction in decreeing the land in question as alimony? It had jurisdiction of the plaintiff, who was a resident of Kansas, and of the county in which the action was brought. The child, whose custody she asked, but who died before the decree was rendered, was within the territorial jurisdiction of the court. The land sought to be appropriated as alimony was within the state and the operation of its laws, and subject to the control and disposition of its courts. The wife asked that this particular tract be subjected to the payment of her claim for support, definitely describing it in her petition, and setting out facts entitling her to alimony. That such relief was demanded, was expressly stated in the publication notice, wherein the land was particularly described. In this way, the land was brought before the court and subjected to its control. It is true, as the authorities cited by the defendant in error show, that, upon such a notice, a judgment for money or one which could be enforced against the person of the defendant cannot be rendered. A court has no authority to render a judgment *in personam* without obtaining jurisdiction of the person of the defendant. Here, however, the land was brought within the control of the court in what was substantially a proceeding *in rem*. The complaining wife was here; the land sought to be subjected as alimony was here; she had an inchoate interest in the land, which possessed the element of property to such a degree that she could maintain an action during the life of her husband for its protection and for relief from fraudulent alienation by her husband. *Busenbark v. Busenbark,* 33 Kan. 572. It

was necessary for the support of the wife, who was seeking a divorce, and the law provides that alimony may be awarded in such cases. The land was subject to the laws of the state and was within the reach of the proceedings and process of its courts. In such a case we think the court has power, not only to terminate the marriage relation, but to fix the custody and control of the children of the marriage who are before the court, and to appropriate as alimony any real property of the defendant within its territorial jurisdiction. It is true that there was no formal seizure of the property, but a seizure of land in such a case is little more than a form. The essential matter is that the defendant shall have legal notice of the proposed appropriation, and this is afforded by the publication notice which warns the defendant that one of the purposes of the proceeding is the sequestration of the land. It refers interested parties to the petition, in which the land is definitely described, and wherein it is asked that the land be set apart as alimony. A formal seizure is no more essential to the jurisdiction of the court in a proceeding of this kind than in an action to quiet title to land based alone on constructive service, and in the latter case it was held that complete jurisdiction was acquired by the court without formal seizure and in the same manner as it was obtained in the divorce proceeding."

See, also, *Goore v. Goore,* 24 Wash. 139 (63 Pac. 1092). These decisions are said to depend somewhat on statutes authorizing the allowance of alimony; for it was said in *Fleming v. West,* 98 Ga. 778 (27 S. E. 157), that:

"While service of a nonresident of the state by publication, if made conformably to the statute, would be sufficient to give the court jurisdiction of the defendant so far as to authorize a decree for divorce, it has been held that it would not give jurisdiction so far as to authorize also a decree for alimony; that while the decree in such a case is

*in rem* in so far as it adjudicates as to the marital status, yet if it undertakes, as an incident of the divorce proceeding, to deal with property rights of the defendant, it becomes in that respect a proceeding *in personam*; and although it is competent for the legislature to authorize the courts to render a judgment for alimony upon constructive notice, as against citizens of the state, it is not competent to do so as against nonresidents of the state."

This view seems to have been shared by other courts. *Smith v. Smith,* 74 Vt. 20 (93 Am. St. 882) ; *Lytle v. Lytle,* 48 Ind. 200; *Elmendorf v. Elmendorf,* 58 N. J. Eq. 113 (44 Atl. 164) ; *Baker v. Jewell,* 114 La. 726 (38 So. 532) ; *Dillon v. Starin,* 44 Neb. 881 (63 N. W. 12) ; *Bunnell v. Bunnell,* 25 Fed. 214.

And Judge Cooley, in his work on Constitutional Limitations (7th Ed.) 584, seems to have entertained a like view, in saying that:

"If the defendant had property * * *, the remedy of the complainant must generally, in these cases, be confined to a dissolution of the marriage, with the incidental benefits springing therefrom, and to an order for the custody of the children, if within the state."

The trouble with these decisions is, as was pointed out in *Hervey v. Hervey,* 56 N. J. Eq. 166 (38 Atl. 767), that the alimony is treated as a purely personal claim. There it was said, in referring to *Bunnell v. Bunnell,* supra, that the court "seems to consider a claim for alimony as a purely personal claim, resting upon the same basis as other personal claims, and, like them, enforcible anywhere by personal service of process within the jurisdiction of the court, but not enforcible otherwise. This view as to the character of the claim for alimony was adopted and stated without any special discussion of its nature, and, so far as relates to the jurisdiction of a court to enforce it merely because of personal service of process

within its jurisdiction on defendant, irrespective of his domicile, seems to be at variance with the authorities. These declare generally that jurisdiction of suits for support, as well as for divorce, depends upon the domicile either of complainant or of defendant, which gives the court jurisdiction over the status, and that the mere service of process 'on defendant in a jurisdiction not the domicile of either husband or wife is no basis for jurisdiction, as it would be in the case of a claim purely personal." The claim for alimony is incident to the status of the parties, and the suit to set apart to the complainant certain property, as such, or to fasten allowance for alimony as a specific lien on specified property, is quite as definitely *in rem* as that for divorce. That such relief may not be recognized in other jurisdictions seems beside the point; for, where the situs of the property is in the state where suit is pending, and it is set apart or a lien established thereon, it is hardly likely ever to be questioned in another jurisdiction. These considerations, touched in but few, if any, of the cases denying the allowance of alimony on service by publication on nonresident spouses, have persuaded the courts, in the cases cited, and perhaps others, to uphold as valid a decree based upon constructive service only, setting apart to the wife property of the nonresident husband, within the territorial jurisdiction of the court, or establishing a specified amount as alimony as a lien on such property, the same having been described in the petition for divorce. The relief sought is not personal in the sense that a judgment on an ordinary indebtedness is personal. The obligation of the husband for the support of the wife affords the basis for the court's action, but this is not regarded as a debt, in the sense of a pecuniary obligation. It arises from a duty which the husband owes as well to the public as to the wife, though not resting on any specific contract. See dissenting opinion in *Schooley v. Schooley*, 184 Iowa 835. Were the

husband in court on personal service, the property in his name might be set apart to his wife in adjusting their relative rights as incident to the entry of a decree of divorce. If the property in which his wife has a marital interest is within the territorial jurisdiction of the court, there is no sound reason for denying her relief, incidental to the action for divorce, as against said property, when specifically claimed on the same service of notice on which the decree of divorce is granted. In one instance, relief is sought against the status of marriage in which both are interested, and in the other, against the property in which both are interested, in consequence of the status. The relief in each instance is *in rem*. See *Hood v. Hood*, 130 Ga. 610 (19 L. R. A. [N. S.] 193), for an interesting review of the subject; also, note to *Stallings v. Stallings*, 9 L. R. A. (N. S.) 593. In many respects, suits for separate maintenance resemble those for divorce. 2 Nelson on Divorce and Separation, Section 1003. Independent suits for alimony do not involve an adjudication of relative property rights. The parties continue husband and wife, and, in the event of the death of either, the other is entitled to his or her distributive share in the property. Allowance is made, suitable for the wife, measured by the situation of the parties and the income of the husband, but no portion of the estate is set apart, or a sum allowed in gross. Such allowance is not absolutely permanent, as it is subject to revision during separation, and may be increased or decreased, according to the circumstances of the parties, thereby preserving the equality of their respective incomes. It terminates whenever the necessity for it ceases. The sole purpose is to afford the wife support during separation. See 2 Nelson on Divorce and Separation, Section 902; *Burr v. Burr*, 7 Hill's Rep. (N. Y.) 207. The relief available is akin to that formerly administered by ecclesiastical courts, which, in entering a decree, awarded the

wife a share of the husband's income. See 2 Nelson on Divorce and Separation, Section 801 and notes. But the ecclesiastical courts granted alimony only as incidental to other relief, and it was but natural, therefore, that courts of equity followed the precedents thus afforded, when they came to exercise jurisdiction. The established rule in England is that chancery will not award alimony, except as an incidental means of relief; and this rule was followed by many courts in this country. See 1 Ruling Case Law 878. In a large majority of the states, however, it is now a settled rule that equity will award alimony, independently of suit for divorce or separation. This is on the broad principle that it is the duty of the husband to support the wife; and if, by no fault on her part, he refuses so to do, although she does not seek divorce or separation, equity will compel him to render her a maintenance commensurate with his means. See 1 Ruling Case Law 878; *In re Application of Popejoy,* 26 Colo. 32 (77 Am. St. 222); *Lang v. Lang,* 70 W. Va. 205 (38 L. R. A. [N. S.] 950).

Though an action for separate maintenance is not authorized by statute, it was held, in *Graves v. Graves,* 36 Iowa 310, upon well-settled equity principles, as well as upon considerations of public policy, that 2. HUSBAND AND WIFE: separate maintenance: desertion for less than two years. the wife may maintain an action for separate maintenance and support, without asking for a divorce; and in *Finn v. Finn,* 62 Iowa 482, that the court may require the husband to provide means of prosecuting such an action, when instituted. Such an action may not be maintained except for cause which would warrant a decree of divorce. *Shors v. Shors,* 133 Iowa 22. But such cause, as desertion, need not be fully matured. *Russell v. Russell,* 150 Iowa 137; *Tallmon v. Tallmon,* 166 Iowa 370. Temporary support may also be allowed, pending suit. *Simpson v. Simpson,* 91 Iowa 235. These rules are so well established in this

state that reference to the diversity of opinion elsewhere is unnecessary. Though the right to maintain suit for alimony without prayer for divorce is well established, the value of such remedy, if not enforcible against a nonresident's property, would be greatly impaired; for in many, if not most, of the cases arising, the derelict spouses may readily, and frequently do, place themselves beyond the jurisdiction in which the other resides, by taking up his or her abode beyond state boundaries. The circumstance that only maintenance is sought, does not impinge upon the fact that, even though independently sought, it is not a purely personal claim, is incidental to the marriage status, or that, where claimed from specifically described property, the action may be *in rem*. In *Blackinton v. Blackinton*, 141 Mass. 432 (55 Am. Rep. 484), a man and woman, citizens of Massachusetts, were married in that state, and subsequently the husband left his wife, without cause, and went to New York, becoming a citizen of that state, the wife continuing to remain a citizen of Massachusetts. Upon petition to the probate court for an order for support and maintenance under a statute, notice of the proceeding by delivery to the defendant was directed, and this notice was served in New York. No attachment of property in the state was made as the basis of the proceedings, and, upon a special appearance, and plea to dismiss for want of jurisdiction, the court sustained the jurisdiction to order a monthly payment for support, the court saying, through Holmes, J., that:

"The whole proceeding is for the regulation of a status. The incidents of that status are various,—some concerning the person, some concerning the support, of the petitioner  or her child. The order to pay money is not founded on an isolated obligation, as in a case of contract or tort, but upon a duty which is one of those incidents. The status, considered as a whole, is subject to regulation here, al-

though it involves relations with another not here, because such regulation is necessary rightly to order the daily life, and to secure the comfort and support, of the party rightfully living within the jurisdiction. It is quite true that these considerations may not suffice to give the decree extraterritorial force, and that, in general, courts do not willingly pass decrees, unless they think that other courts at least ought to respect them. But that is not the final test. We think that the statute was intended to authorize such decrees as that appealed from, and tacitly to adopt the rules as to service expressly laid down for divorce. Pub. Stats., Ch. 146, Sec. 9. We do not see any sufficient ground for denying the power of the legislature to pass the act. We are therefore of opinion that the decree was within the power of the court, and can be carried out against the defendant's property within the jurisdiction, and against his person if he be found here."

The statutes of Massachusetts then in force merely authorized suit for separate maintenance, and the service of notice on nonresidents as in this state; and, as the right to maintain such an action is here recognized, independent of the statute, this decision is persuasive authority for the conclusion we reach.

In *Murray v. Murray*, 115 Cal. 266 (56 Am. St. 97, 37 L. R. A. 626), the suit was for separate maintenance, and that transfers of certain real property, made by the defendant to defeat the claim, be set aside, and such property subjected to the alimony allowed. The defendant was a nonresident, and served by publication. On hearing, the court decreed that such transfers be set aside, and that the wife occupy the premises where the parties formerly resided as a home, allowed her $25 a month for support, and made the same chargeable upon the real estate, with provision for the discharge of the lien established against the realty. In the course of the opinion, the court observed that:

"Service of summons by publication, or other form of substituted service of process for notifying an absentee or nonresident defendant of an action against him, is allowed to be effectual 'where, in connection with the process against the person for commencing the action, property within the state is brought under the control of the court, and subjected to its disposition by process adapted to that purpose, or where the judgment is sought as a means of reaching such property, or affecting some interest therein.' *Pennoyer v. Neff,* 95 U. S. 733; *Brown v. Campbell,* 100 Cal. 641 (38 Am. St. Rep. 314). Perhaps the jurisdiction in this case is maintainable on the ground that the judgment is sought as a means of affecting an interest in the property described in the complaint; however that may be, we have no doubt that by means of the receiver's possession of the property, and the due publication, etc., of the summons, the court acquired jurisdiction to subject the property seized to the satisfaction of its lawful judgment. According to the common experience of mankind, the owner of property keeps some oversight of it, wherever situated, and will probably be apprised of the seizure thereof and so warned of the purpose of the seizure; to accomplish this object, the taking of property into the possession of a receiver is at least as well adapted as the similar taking by process of attachment, and it is common practice to apply property which has been attached in the course of an action *in personam* against a nonresident to the satisfaction of the judgment obtained, although no personal service of summons has been effected. Attachment is not the only means by which the court may acquire control of the property of the absentee defendant, so as to impress the action, as to such property, with the jurisdictional characteristics of a proceeding *in rem.* Several recent cases illustrate this conclusion."

In *Thurston v. Thurston,* 58 Minn. 279 (59 N. W. 1017),

the husband had abandoned the wife, and had obtained a decree of divorce in the state of Washington. Subsequently, she instituted an independent suit for alimony in Minnesota; and the court, after holding that the decree in Washington was not *res adjudicata,* proceeded to allow alimony, and ordered its payment from property described in the petition, saying:

"If the property of Thurston in this state is not the possession of the Rothschilds, or the title to it is in the name of one or both of them, obtaining jurisdiction of them is a sufficient seizure of the property by the court to enable it to proceed against the property by constructive service on Thurston."

These authorities are persuasive in reaching the conclusion that the trial court did not exceed its jurisdiction in ordering the trustee to pay for the wife's support from the income derived and to be derived from the decedent mother's estate, and payable by the trustee to the husband. This language from *Pennoyer v. Neff,* 95 U. S. 714 (24 L. Ed. 565), is pertinent:

"The state, through its tribunals, may subject property situated within its limits owned by nonresidents to the payment of the demand of its own citizens against them; and the exercise of this jurisdiction in no respect infringes upon the sovereignty of the state where the owners are domiciled. Every state owes protection to its own citizens; and, when nonresidents deal with them, it is a legitimate and just exercise of authority to hold and appropriate any property owned by such nonresidents to satisfy the claims of its citizens."

In the case at bar, the court sought to protect the resident wife by appropriating a part of the nonresident husband's income, derived from property in this state, to her support. The husband was served with notice of precisely the relief sought; and we are of the opinion that the court

had authority to protect the family of the derelict husband by entering the decree from which this appeal is taken. This conclusion is in harmony with the provisions of Section 3158 of the Code, which authorizes, in the event of abandonment for one year, without providing for the maintenance of the family, an application by petition, setting forth the facts, and which provides that "the district court of the county where the abandoned party resides may * * * authorize the applicant to manage, control, sell, and incumber the property of the guilty party for the support and maintenance of the family and for the purpose of paying debts." Notice of such proceedings by publication is authorized, and possibly moneys in the hands of the trustee might have been seized in pursuance of this statute. We rest our conclusion, however, on the grounds heretofore stated.

Counsel challenges the finding of the court that enough of the income was on hand to pay the amounts ordered to be paid therefrom. If this were found to be so, it would merely exact a modification of the decree, so as to direct payment thereof from the income thereafter to be collected. For this reason, and as enough of the income must since have been collected, we do not review the accounting. What we have said disposes of the controversy, without reverting to the garnishment proceedings.

The appellee moved to dismiss the appeal on the ground that defendant Shipley was not served with notice thereof. As a reversal could not have proven prejudicial to him, the motion is overruled.—*Affirmed*.

EVANS, GAYNOR, PRESTON, and SALINGER, JJ., concur.