DOROTHY J. OLDS, Appellee, v. RUSSELL B. OLDS, Appellant.

No. 42769.

1396

April 2, 1935.

Opinion Modified and Rehearing Denied June 21, 1935.

F. F. Faville, W. G. Henke, and Robert E. Cantwell, Jr., for appellant.

Senneff, Bliss & Senneff, for appellee.

MITCHELL, J.—Many of the details of this peculiar case may be omitted, but it seems desirable to outline the matter somewhat briefly.

Appellant and appellee were married on January 17, 1920, and had three children. The oldest at the time of the trial was twelve, the second eight, and the third six. They and their children had always made their home in Charles City, and, at the time of the trial, the children were living with their mother in the same home.

Along in February of 1933, trouble developed in the home. No good would be accomplished by setting out the various accusations that were made by each party against the other. They contined, however, to live in the same house, and, it is the claim of the appellee, lived as man and wife up until some time the early part of June, 1933, when the appellant left the home and went to his father's house. But before leaving, appellant stated he was going to Chicago and get a divorce. On June 29, 1933, the appellee filed a petition for injunction and on the same day the order for issuance of the writ was duly signed,. reading as follows:

"Upon reading the foregoing petition, it is ordered that writ of injunction issue restraining the defendant Russell B. Olds by himself, agent or attorneys from in any manner proceeding in the State of Illinois by way of action for divorce, or by way of any action to settle any marital questions between the plaintiff and defendant, or any property questions between them, or the custody of their minor children, and that he be further restrained from molesting this plaintiff in the home or from undertaking to remove the children from the home, and that said writ issue upon the plaintiff's filing a bond in the sum of $100.00, and surety to be approved by the Clerk of this Court."

The writ of injunction was personally served on the appellant on the 29th day of June, 1933. He ignored the injunction issued by the Iowa court, and proceeded in Cook county, Illinois, to get his decree, which was entered on October 10, 1933, by the Illinois court. In the meantime, and on August 23, 1933, the appellee in this case filed her petition for separate maintenance, based on allegations of cruel and inhuman treatment, and adultery. Petition asked for temporary and permanent alimony, suit money, and the custody of the three minor children of said parties, and a writ of attachment, to issue without bond, against the property of the appellant. Upon presentation of the petition to a judge of the district court, an order was entered that a writ of attachment issue in the sum of $50,000, without bond, and said writ of attachment was duly issued and levy made thereunder. The appellant filed an answer, in which he set up the statutes and decisions of the state of Illinois, and the record of the case in the superior court of Cook county, wherein the appellant was plaintiff and the appellee herein was defendant, and in which case a decree of divorce was rendered in behalf of the

appellant. As a separate division of his answer, the appellant alleged that the appellee had been guilty of adultery in the city of Chicago in March of 1933, and that she was not a proper person to have the care, custody, and control of the children. Appellee filed a reply, wherein she alleged that the court in Illinois was without jurisdiction in granting the divorce to appellant, and alleged that prior to the filing of the bill of divorce in the superior court of Cook county the appellee had secured a writ of injunction against the appellant, restraining him from proceeding in the courts of Illinois to obtain a decree of divorce, and that appellant had ignored said injunction and was guilty of contempt of court in so doing.

After listening to the evidence, the lower court decreed that appellee was entitled to a decree of separate maintenance and the custody of the children, and ordered the appellant to pay to appellee $7,000 for her support and maintenance during the ensuing year; that she be allowed the sum of $4,000 in addition for attorney's fees and costs; and appellant was further ordered to make payment of $6,000 each succeeding year; and confirmed the attachment that had been issued and ordered special execution for the sale of the attached property.

From the finding and decree of the lower court, the appellant has appealed to this court.

The first error which appellant argues is that a judge of a district court in vacation has no jurisdiction whatever to order an attachment to issue without bond, in a suit for separate maintenance. In the case at bar a judge of the district court in vacation ordered that an attachment issue without bond against the property of the appellant upon presentation to him of the petition for separate maintenance. The appellant duly filed a motion to dismiss the attachment, which was overruled.

In this state divorce is wholly statutory. Section 10469 provides:

"An action for divorce shall be by equitable proceedings, and no cause of action, save for alimony, shall be joined therewith."

The jurisdiction, the grounds for divorce, the right to an attachment, the denial of remarriage, and other matters pertaining to divorce are all provided for in the Code.

The first time that the question of separate maintenance came before this court was in the case of Graves v. Graves, 36 Iowa 310, 14 Am. Rep. 525. The court said, at page 311:

"The main question involved in this controversy is, whether a court of equity has the authority or jurisdiction to entertain an action brought for alimony alone, and to grant such alimony where no divorce or other relief is sought."

At page 313 the court continued: "The question here involved has never been before, or decided by, this court."

And then the court said at page 314: "It seems to us, that upon well-settled equity principles, as well as upon considerations of public policy, the action may be maintained without asking a divorce or other relief."

In Shipley v. Shipley, 187 Iowa 1295, at page 1306, 175 N. W. 51, 55, this court said:

"Though an action for separate maintenance is not authorized by statute, it was held in Graves v. Graves, 36 Iowa 310, 14 Am. Rep. 525, upon well-settled equity principles, as well as upon considerations of public policy, that the wife may maintain an action for separate maintenance and support without asking for a divorce; and in Finn v. Finn, 62 Iowa 482, 17 N. W. 739, that the court may require the husband to provide means of prosecuting such an action when instituted."

Again, in Freet v. Holdorf, 205 Iowa 1081, 1083, 216 N. W. 619, 620, this court said:

"The action of separate maintenance is not based upon specific statutory provision, but rests on broad principles of equity, and may be granted though no divorce or other relief is sought. Graves v. Graves, 36 Iowa 310, 14 Am. Rep. 525."

And in the recent case of Bartlett v. Bartlett, 214 Iowa 616. at pages 618, 619, 243 N. W. 588, 589, this court said:

"Separate maintenance without a divorce in this state is allowed independent of statute. Kalde v. Kalde, 207 Iowa 121, 222 N. W. 351; Davies Dry Goods Co. v. Retherford, 195 Iowa 635, 191 N. W. 794; Shipley v. Shipley, 187 Iowa 1295, 175 N. W. 51. Although the statute does not authorize an action for separate maintenance without a divorce, this court has recognized the right of one spouse to bring such proceeding against the other. The basis upon which the right to obtain separate maintenance without a divorce is founded, may be ascertained in Graves v. Graves, 36 Iowa 310,

14 Am. Rep. 525. There this court said, reading on pages 312 and 313:

" 'It is true, beyond controversy, that the great weight and number of the English authorities deny such jurisdiction. And it is, perhaps, also true that the number and possibly the preponderance of the American authorities are in accord with the English. But there are well-considered cases and authorities of great weight which affirm the jurisdiction. Judge Story says, of these latter, that "there is so much good sense and reason in the doctrine that it might be wished it were generally adopted." * * * That a husband is bound, both in law and in equity, for the support and maintenance of his wife is a proposition hitherto and now undisputed. * * * Here then is a plain legal duty of the husband for the violation of which no adequate remedy, even with a multiplicity of suits, can be had, except in a court of equity. Upon the ground of avoiding a multiplicity of suits, or on the ground that no adequate remedy can be had at law, a court of equity may properly base its jurisdiction in such cases. And, under our law, we do not see, since the husband owes this obligation of maintenance to the wife, as well as to the public, why she may not, independent of any other ground, maintain this action against him.' "

Thus this court has continuously held that a suit for separate maintenance does not rest on the divorce statute, but is only maintainable in this state under the general powers of a court of equity to prevent a multiplicity of suits and to uphold a public policy.

The next question which confronts us then is, "Can a judge of a court of equity in vacation order a writ of attachment to issue without bond in a suit for separate maintenance?" Code section 10479, pertaining to attachments in divorce cases, has no application to an attachment in a separate maintenance action because, as set out in this opinion, this court has held time and time again that an action for separate maintenance is not an action for divorce.

It is a well-established rule · that attachment proceedings are in derogation of the common law.

In Eads v. Pitkin, 3 G. Greene (Iowa) 77, at page 83, this court said:

"Having resorted to this mode of procedure it was incumbent on him to comply with the provisions of the attachment law of the state by filing the affidavit therein prescribed, and giving the bond

required by that law, before the issuing of the writ. By simply providing that the complainant might proceed in his action by attachment, without prescribing any special mode of procedure different from that which is set forth in the general attachment law of the state, it must be presumed that it was the intention of the legislature that the requirements of that law should be observed, and strictly pursued. The proceeding by attachment being extraordinary in its nature, and designed for application to secure the ends of justice in cases specified, and when the ordinary process of law would be unavailing, it is not presumable that the legislature would have authorized a plaintiff to resort to it without protecting the interests of the defendant by the usual and necessary guards. To adopt such a presumption would be in contravention of the most manifest principles of reason and right. It would expose a party defendant to a ruinous sacrifice of his property and effects, at the mere will of an attaching complainant. Such a presumption of legislative design would be violent indeed."

And in Tiffany v. Glover, 3 G. Greene (Iowa) 387, at page 390, this court, referring to an attachment proceeding, said:

"The proceeding being in derogation of the common law, and of a violent character, it should affirmatively appear by the officer's return, that the provisions of the statute had been strictly observed, as the jurisdiction of the court over the property depends entirely upon a legal levy. * * *

"In proceedings in attachment, the jurisdiction of the court is obtained by special authority, derived from the legislature, and hence the doctrine of presumption, as applicable to courts in the exercise of common law powers, cannot apply."

The late Justice DeGraff, speaking for this court in Edwards v. Tracy, 203 Iowa 1083, at page 1084, 212 N. W. 317, 318, said:

"Proceedings in attachment are ancillary or auxiliary to the main action and are statutory, being unknown to the common law. Curry v. Allen, 55 Iowa 318, 7 N. W. 635; Eads v. Pitkin, 3 G. Greene, 77; Delaplain & Co. v. Armstrong & Ulrich, 21 W. Va. 211; Penoyar v. Kelsey, 150 N. Y. 77 (44 N. E. 788, 34 L. R. A. 248.) An attachment is not the leading process. Its only office is to hold the property attached under it for the satisfaction of plaintiff's demand. In a sense, it is an execution by anticipation. It is in

derogation of the common law, but, under our statute, the proceedings are to be liberally construed. Section 12143, Code of 1924. A court, however, cannot proceed by attachment unless the power rests upon express statutory sanction."

Attachment proceedings are wholly statutory and we must look to the statute to find when an attachment may issue. A court of equity has no general jurisdiction to order an attachment without bond. In certain cases, under section 12085, the judge in vacation may make an allowance of the amount in value of the property that may be attached, but in no event can the judge order an attachment to issue without bond except in the one instance of a divorce, under section 10479, which has no application to the case at bar because this is an action for separate maintenance, which in Iowa is not an action for divorce.

The appellant challenged the attachment proceedings by motion, which motion was overruled. In doing this the lower court erred.

Upon the petition for rehearing for the first time, the appellee raises the question in this court that the appellant's motion to discharge the attachment was not timely. This was not argued to the lower court nor upon the original submission. Not having been urged before, this court will not give consideration to this matter upon presenting it for the first time in the petition for rehearing. The attachment should have been released and the property attached discharged.

The next question raised by the appellant is that the decree which was obtained in the state of Illinois is a complete defense to this action.

It is the claim of the appellee that the Iowa court had a right to inquire into the question of whether or not the Illinois court had jurisdiction or whether a fraud was perpetrated on the Illinois court in the matter of the appellant's residence.

In the case of Way v. Way, 64 Ill. 406, the Illinois court said:

"Residence of the party injured is essential to jurisdiction. If the offense was committed without the State, and neither party resided here, a residence of one year is required. If the offense was committed within the State, and neither party was a resident at the time; or if committed without the state, and one or both parties resided here, then actual residence must still exist, to confer the right to sue, but not a residence for one year."

Therefore, under the holding of the Illinois court, before the appellant was entitled to a divorce in Illinois he had to be a resident of that state.

Has the Iowa court a right to inquire into whether or not the Illinois court had jurisdiction in granting the divorce to the appellant in the state of Illinois? This very question has confronted this court before. In the case of Beeman v. Kitzman, 124 Iowa 86. at page 87, 99 N. W. 171, this court said:

"The fact that plaintiff was married to and became the lawful wife of Samuel P. Beeman on or about October 25, 1895, is not seriously disputed, but it is contended that said marriage relation was dissolved by a decree of divorce during the husband's lifetime, and that, as a necessary consequence, no right of dower was left in the plaintiff. It appears that Beeman was an old resident of Keokuk county, and at the time of his marriage with the plaintiff was about 61 years of age, and had been divorced from a former wife. The circumstances attending this latter matrimonial venture are not very fully disclosed, but enough is shown to indicate that it is not alone the young and immature who marry in haste and repent with celerity. The plaintiff, who was a resident of New York. prior to the marriage, very soon returned to that state, and separation followed within a few months. In July, 1897, Beeman instituted a suit against plaintiff for divorce in the district court of Stutsman county, in the state of North Dakota. Service of summons in said proceeding was made on plaintiff in New York. She did not appear to said suit, and was adjudged to be in default. On October 8, 1897, said court entered a decree finding Beeman entitled to a divorce from his said wife on the ground of desertion, and declaring the said marriage relation dissolved. If this decree is to be considered and respected as a valid and binding adjudication, the plaintiff has no standing in the case before us, and the relief she demands should be denied.

"Appellant contends that, the North Dakota court being a court of competent jurisdiction to entertain and try actions for divorce, its decree must be given full faith and credit by us until set aside by some appropriate method of direct attack. If this be correct, then a husband may leave his wife, go to a distant state, and there, by gross fraud, obtain a decree of divorce, which, being regular upon its face, will serve all the purposes of a decree honestly and properly obtained, and bar the wife thus wronged of all her marital

rights, unless she takes upon herself the trouble and expense of going to the jurisdiction where the fraudulent divorce was granted, and by appropriate proceedings in that court have the same set aside or annulled. The proposition is not supported by the authorities, and, moreover, is manifestly unjust. A judgment or decree rendered by a court which has obtained no jurisdiction over the parties, or by a court whose jurisdiction is fraudulently invoked against a nonresident who fails or refuses to appear in the action, is void. A void decree is no decree, and its validity may be contested in any court where such pretended adjudication is pleaded. This rule has been repeatedly affirmed in respect to decrees of divorce fraudulently obtained. Lowe v. Lowe, 40 Iowa 220; Webster v. Hunter, 50 Iowa 215; Whetstone v. Whetstone, 31 Iowa 276; State v. Fleak, 54 Iowa 429, 6 N. W. 689; Leith v. Leith, 39 N. H. 20; Sewall v. Sewall, 122 Mass. 156, 23 Am. Rep. 299; Van Fossen v. State, 37 Ohio St. 317, 41 Am. Rep. 507; Andrews v. Andrews, 188 U. S. 14, 23 S. Ct. 237, 47 L. Ed. 366; Bell v. Bell, 181 U. S. 175, 21 S. Ct. 551, 45 L. Ed. 804; Streitwolf v. Streitwolf, 181 U. S. 179, 21 S. Ct. 553, 45 L. Ed. 807; Thompson v. Whitman, 18 Wall. 457, 21 L. Ed. 897; Gregory v. Gregory, 78 Me. 187, 3 A. 280, 57 Am. Rep. 792; Reed v. Reed, 52 Mich. [117] 121, 17 N. W. 720, 50 Am. Rep. 247; People v. Dawell, 25 Mich. 247, 12 Am. Rep. 260. We must therefore hold that it was competent for appellee to plead and prove that the decree of divorce in Beeman's favor was fraudulently procured."

Again, in Oziah v. Howard, 149 Iowa 199, at page 203, 128 N. W. 364, 365, this court said:

"The contention for appellant at this point is that the decree, although founded only on service by publication, is conclusive, except as against a direct attack, and, as plaintiffs have taken no steps to have such a decree set aside or vacated, they cannot now collaterally impeach it. But it is well settled that a decree entered without jurisdiction of the parties is void and may be attacked on that ground collaterally or otherwise whenever it is relied upon as against defendants named therein as parties over whom the court has in fact acquired no jurisdiction."

Thus it appears without any question that the Iowa court has a right to ascertain whether or not the Illinois court had jurisdiction at the time the decree in favor of the appellant was entered.

The record shows that the appellant filed his complaint on September 1, 1933. On August 31, 1933, the day before he filed his complaint in the Illinois court, seeking a divorce, the appellant swore to a petition, asking that he be appointed guardian for his children, swearing that he was a resident of Charles City, Iowa. On September 22, 1933, twenty-two days after he filed his petition in the Illinois court, this appellant, for the purpose of getting an absent voter's ballot, swore he was a resident of Charles City, Iowa. On September 29, 1933, he returned his ballot with an affidavit that he was a resident of Charles City, Iowa, giving as his legal address on that date, "601 Milwaukee Street, Charles City, Iowa," the house in which his wife was then living. This absent voter's ballot was voted under his written direction on October 3d, two days before he took his default in the Chicago case and only seven days before he proved up and obtained his alleged decree. Thus we find upon the sworn statement of the appellant himself that at the time he commenced his action in the Illinois court to secure the divorce, and seven days before he proved up his divorce, which he now pleads as a defense to this action, he was not a resident of Illinois. Under oath he said he was not—not once, but three times. It therefore follows that the Illinois decree is void because of want of jurisdiction and because a fraud was perpetrated on the Illinois court on the question of the appellant's residence.

We now come to the trial of the case at bar on its merits.

 There is ample testimony in the record to sustain the claims of the appellee that whatever wrongs she committed in the city of Chicago the appellant was a party to them.

In 19 Corpus Juris 90, section 209, we find:

"Connivance precludes the granting of a divorce to a party guilty thereof upon whatever grounds the suit is brought"—citing Riesen v. Riesen, 148 Ill. App. 460.

Again, in section 211:

"A spouse is guilty of connivance, who, for the purpose of obtaining a divorce, actually procures the commission of adultery by the other, either personally or by an agent, notwithstanding such agent acted without complainant's knowledge, or without the authority of the complainant to bring about the commission of the offense" —citing May v. May, 108 Iowa 1, 78 N. W. 703, 75 Am. St. Rep. 202.

In the case at bar we find that Mrs. Olds made the trip to Chicago at the request of her husband. Immediately upon the departure of the train carrying Mrs. Olds to Chicago, the appellant called up his attorneys in Chicago and directed them to put a detective upon the trail of his wife just as soon as she arrived in that city. The appellant had given to his wife the name of a man who would entertain her. She did not call him on the first day she was there. The night following her arrival Mr. Olds telephoned and told his wife that this man would be in Chicago the next day and to call him. She obeyed the command of her husband and what he now complains of is the result of that meeting which the husband planned.

Centuries ago there were proclaimed from the mountain top mandates to mankind, and amidst the lightning flash one made manifest was, "Thou shalt not commit adultery." Appellant seems to think the commandment was, "No woman shall commit adultery," but, as we recall, no such limitation was placed upon that promulgated rule of human conduct. No good could be accomplished by setting out the evidence in this case. The court is convinced from the record that the appellant had no cause prior to this trip to Chicago to suspect his wife of wrongdoing, nor has there been any occasion to suspect his wife of such since her return. Without going into detail as to the facts shown in evidence, the record clearly shows that whatever misstep or misconduct Dorothy J. Olds was guilty of, it was fully condoned and forgiven by appellant through the resumption of the marital relations in their home.

Appellant claims that the appellee is bound by a certain stipulation which was drawn in the office of Mr. Olds' attorney in the city of Chicago. The original agreement was never produced in the Iowa court. It was drawn by the attorney representing appellant, without any independent adviser for appellee. It stripped her of all of her property, including any interest in any of the property which the appellant owned. It took from her the children to whom she gave birth and to whom, according to the undisputed record she was a good mother. In view of the manner in which this stipulation was secured, and the terms of same, no court of equity could give it consideration.

Appellant complains that the allowance is excessive and unreasonable. The evidence shows that the income received by the appellant from a one-third interest in certain oil property in Okla-

homa during the four years immediately preceding the trial was in excess of $100,000. In 1930 he signed a bank statement that he was worth $242,000. In 1931 he declared he was worth $250,000. He claims that these properties have shrunk in value since that time, but there is no evidence in the record to that effect. If his holdings had substantially shrunk in value at the time of the trial, he could easily have shown this by his personal appearance and testimony, or by deposition. There is no data upon which to base appellee's relief, except as the record of her testimony indicates. The amount is a large one, but, upon the showing made, we believe it is a fair one.

There are other questions raised, all of which have been given careful attention. The motion of appellee to dismiss this cause in this court is overruled.

The judgment and decree of the lower court is hereby modified to the extent that the attachment is released. With this modification the judgment and decree of the lower court is affirmed. The petition for rehearing is hereby overruled.

All Justices concur.